UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:08CV109-J

KIMBERLY BROWNFIELD                                                                        PLAINTIFF

VS.

MICHAEL J. ASTRUE,
      Commissioner of Social Security                                                     DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Kimberly Brownfield ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be vacated and the matter remanded for further proceedings.

## PROCEDURAL HISTORY

On August 20, 2003, Claimant filed application for disability insurance benefits, alleging that she became disabled as of May 15, 2002. After the initial decision, the Appeals Council remanded the matter for further proceedings. After a second hearing, Administrative Law Judge Patrick B. Kimberlin ("ALJ") determined that claimant's mood disorder, insulin dependent diabetes mellitus, epicondylitis of the right elbow, right tympanomastoidectomy defect, neck and low back pain, and cardiac complaints were not "severe impairments." This became the final decision of the Defendant when the Appeals Council denied review on May 27, 2008.

## STANDARD OF REVIEW

The disability determination process consists of five steps. Wyatt v. Secretary, 974 F.2d 680

(6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process. Only two steps are relevant to the current case:

1. The claimant must not be engaged in substantial gainful activity.

2. The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most. 20 CFR Section 416.921.

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

## ARGUMENTS ON THIS APPEAL

Plaintiff argues that the ALJ committed legal error in failing to find that her mental impairment was severe. The "severe impairment" determination – step two of the sequential disability determination process – has been characterized as a " de minimis hurdle." See, e.g., Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir.1988): "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." A "severe impairment" is one which "significantly limits physical or mental ability

to do basic work activities."[1]

There is no question that plaintiff receives treatment for depression. However, the ALJ determined that the impairment produced no more than a minimal effect on functioning prior to the December 31, 2003 expiration of insured status. Thus, the central question here is whether substantial evidence supports that finding, and we approach this question with the understanding that the Step Two analysis is required to be very generous to the claimant.

The first medical references to depression are found in the notes of plaintiff's treating endocrinologist in 2002 and 2003. Because of the symptoms of depression and anxiety, Dr. Self decided to try her patient on Paxil. Tr. 270. As early as June of 2002, Ms. Brownfield reported that the Paxil 12.5 mg was not working, and Dr. Self increased the dosage to 20 mg. Tr. 151. On August 9, 2002, Dr. Self again increased the Paxil dosage. Tr. 154/155. The problems apparently continued, for on August 22, 2003, Dr. Self switched her patient to Welbutrin. Tr. 149. On October 15, 2003, Ms. Brownfield discontinued the Welbutrin due to side effects, but she explained to Dr. Self's office that she "can't be without this medication or something like it," and she was switched to Welbutrin XL. Tr. 269. On November 6, 2003, Dr. Self added Lexapro. Tr. 267.

When Ms. Brownfield presented at Agape Counseling Services on January 28, 2004, she reported anxiety, irritability, inability to sleep, and mood swings, the very complaints she had voiced to Dr. Self for two years. At that time she was still taking Welbutrin XL and Lexapro. Tr. 224.

---

[1] Basic work activities are defined in the Social Security regulations as "the abilities and aptitudes necessary to do most jobs. Examples of these include-(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b)

When Ms. Brownfield saw Dr. Mudd, a psychiatrist, in July of 2004, she had the same complaints. At that time, Dr. Mudd assessed the limitations flowing from those symptoms and reported significant limitations.

Despite this consistent history of complaints and treatment for anxiety and depression over the course of two years prior to the expiration of insured status, the ALJ found that the pre-2004 records showed no more than minimal limitations. His description of the Self records is that she "mentioned depression and stress in 2002 and 2003 in her treatment notes, but no assessment of the severity of the claimant's limitations was noted." Tr. 30. He also found it significant that Ms. Brownfield did not seek treatment from a psychiatrist until six months after the date last insured. Id. This overlooks the fact that her seeing Dr. Mudd was a continuation of treatment she had received for two years prior to the expiration of insured status.

The ALJ also referred to a November 2003 mental examination which accorded a Global Assessment of Functioning score[2] in the range applicable to "Some mild symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." The Sixth Circuit as well as this Court have often cautioned against over-reliance – one way or the other – on GAF scores, but given that the GAF was considered by the ALJ in this case, it is worth noting that it would take a higher score than that given Ms. Brownfield to constitute an assessment of "no more than slight" limitations, a description remarkable similar to the description of an impairment that is not severe.

---

[2] According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis V's "Global Assessment of Functioning" scale considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV at 32.

4

Furthermore, the November 2003 evaluation included the observation that her concentration was only "fair," as well as this statement: "I think the patient would be capable of *many* work related activities." Tr. 182 [emphasis added]. The use of the word "many" necessarily suggests that there are some work related activities that *would* be beyond her capabilities, thus calling for a closer examination of her limitations.

In short, bearing in mind that the "severe" designation is a "de minimis hurdle," the Court concludes that the record fails to provide substantial evidence in support of the ALJ's decision. That is, given the record as a whole, his conclusion that plaintiff's depression/mood disorder "is a slight abnormality that minimally affects work ability" is not supportable, and termination of the analysis at Step 2 was an error of law. As a result of this error, it is necessary that this matter be remanded for further consideration under the sequential evaluation scheme.

An order in conformity has this day entered.